Martin v. Cochran.

---

ALBERTIS MARTIN, *Appellant,* v. C. G. COCHRAN, *Appellee.*

No. 16,290.

FRAUD—*Assignment of School-land Certificates—Agency.* In an action to recover school land, assignments of certificates of purchase of which were alleged to have been procured from the plaintiff by fraud, the evidence held to support the findings and judgment for the defendant.

Appeal from Rooks district court; CHARLES W. SMITH, judge. Opinion filed January 8, 1910. Affirmed.

*David Rathbone,* and *Orsemus H. Bentley,* for the appellant.

*Z. C. Millikin,* and *S. N. Hawkes,* for the appellee.

*Per Curiam:* This action was commenced by the appellant in the district court of Rooks county to recover of the appellee possession of 560 acres of land in that county. The appellant claims that the land was originally school land, and that he purchased it from the state; that about 1894 he removed to Illinois, leaving the land in charge of the appellee, as his agent; that the appellee allowed the land to be sold for taxes and permitted the interest to accumulate until the land became forfeited to the state, after which, by deceit and fraud, he obtained title to himself. The fraud alleged is in substance that the appellee, while acting as the trusted agent of the appellant, induced the appellant to assign the certificates of purchase from the state to the appellee in blank, so that he might dispose of the same to the best advantage for the appellant, and he then caused his own name to be inserted as assignee and afterward took a patent from the state in his own name.

It is claimed that the appellant expected the appellee to pay taxes and interest out of rent received from the land. This constitutes the real grounds urged for recovery. The district court filed conclusions of law and fact which, so far as they relate to this claim, read:

### "FINDINGS OF FACT.

"(3) On March 26, 1896, Albertis Martin and his wife, Charlotte Martin, assigned their interest in said land in blank and forwarded the certificates of purchase with the assignments to the defendant, C. G. Cochran, who inserted his name in the assignments as assignee and [January 9, 1900,] caused said assignments to be made a matter of record in the office of the clerk of Rooks county, on the record of school-land sales. These assignments were for the express consideration of $100, which was inserted in the assignment by Forrest Cochran, son of defendant, but no part of said sum was ever paid to plaintiff.

"(7) After this time, and before it also, the county

clerk recognized C. G. Cochran as the owner of said school lands, excepting only as to the interest of the state therein. The defendant, C. G. Cochran, from the time of the assignments, treated the land as his own.

"(8) On August 9, 1899, default existed in the payment of the interest on the deferred payments due the state on the lands. A notice was issued out of the office of the county clerk at Stockton, Kan., to the defendant, C. G. Cochran, as the purchaser or the assignee of the original purchaser, notifying him of the delinquency and that unless paid within sixty days from the date of the service of the notice he would forfeit all right to the land.

"(9) Under these notices the north half of the S. W. ¼ of 16-10-18 was forfeited to the state, and afterward all of said quarter was sold by the state and bought in by the defendant Cochran. The defaulted interest being $181.44 on the northeast quarter, $181.44 on the northwest quarter of 16, and $155.52 on the northwest quarter of 9, and this was paid by Cochran on October 4, 1899, and forfeiture of these tracts thereby prevented. October 21, 1905, defendant paid out on each of these three quarter sections and obtained a patent.

"(10) Plaintiff failed to pay any interest on the deferred payments on the land after 1892 and failed to pay any taxes on the land in suit after that year, but made default in both. From 1892 forward for several years crops were light in this county and in the vicinity of this land, some years very little being raised. The country became quite largely depopulated, all values depreciated, and especially the land values. In 1894 plaintiff left the state, taking up his residence in Illinois. He left the land in possession of one Alva Bell, as his tenant. The land was largely fenced and used as a pasture at this time, and Bell had authority to collect rent for pasturage and remit it to plaintiff. Plaintiff at such time also owned a building in Plainville, which was then occupied by one W. T. Chase. I find that plaintiff did not leave the land in charge of defendant as his agent to collect the rents and profits when he left it in 1894, but that he left it in possession of Alva Bell, with power in him to collect and remit for the value of any pasturage enjoyed by third parties, and that Bell was to account directly to plaintiff under his tenancy for his own rental of the lands. The plaintiff was attending to his own business interests in and about Plainville after his leaving the state in 1894 up to

December 26, 1895. I find that plaintiff did not constitute defendant his agent to look after his property left here in Rooks county when he left the state in 1894; that he did not constitute him his agent to control and care for the school land at that time as claimed in plaintiff's petition and testified to by him on this trial.

"(11) March 26, 1896, plaintiff and his wife acknowledged the execution of the blank assignments of the school-land certificates of purchase, as hereinbefore set out, and forwarded them to the defendant. He received them and soon thereafter went into possession of the land described in them, paid taxes on them, paid interest on the deferred payments, and, while he did not file them of record in the office of the county clerk until January, 1900, it was so generally known that he was occupying the lands as his own that the county clerk caused the notice of forfeiture to issue to defendant as owner of them in August, 1899.

"(12) I find that at the time plaintiff assigned the school-land certificates of purchase in blank he intended to give defendant authority to insert therein the name of anyone to whom he might dispose of them, including defendant's own name, if he decided to "want it," as stated in plaintiff's letter of 1895, written from Perkins, Okla. The plaintiff learned as early as February 9, 1900, that defendant was holding the land in his own name as his own land.

"(13) The defendant went into possession of the land in suit soon after March 26, 1896, and has been in the open, exclusive and notorious possession of the land ever since, and the place has been generally recognized and known as the Cochran ranch ever since.

"(16) This action was begun October 28, 1905."

"CONCLUSIONS OF LAW.

"(1) The assignment of the school-land certificates of purchase in blank, under the facts, gave defendant the lawful right to complete the assignments by filling in the blanks as he did.

"(2) The assigned certificates, after being filled out, conveyed all the interest in the lands represented by them and before held by the plaintiff.

"(3) The defendant is the owner of the land in suit.

"(4) If plaintiff at any time after assigning the certificates had any cause of action against the defendant for recovery of the lands, such cause of action is barred by the two-year statute of limitations."

These findings of fact are based upon evidence which is sharply conflicting and are conclusive here. It follows that the plaintiff has no case.

The judgment of the district court is affirmed.